UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRON COOLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SERVICEMASTER COMPANY, LLC, TERMINIX INTERNATIONAL, INC., THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:20-cv-01382-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Tyron Cooley, on behalf of himself and all others similarly situated, ("Plaintiff") seeks relief from Defendants The ServiceMaster Company, LLC, Terminix International, Inc., The Terminix International Company Limited Partnership, and DOES 1 through 50, inclusive (collectively, "Defendants" or "Terminix") for violation of Cal. Lab. Code §§ 201-204; Cal. Lab. Code §§ 201-203, 226, 226.7, 510, 512, 1194, 2699 et seq., 2751, and 2802; applicable Industrial Welfare Commission Wage Orders; Cal. Bus. & Prof. Code § 17200, et seq.; and Labor Code Private Attorneys General Act of 2004 ("PAGA"). See Not. of Removal, Exhibit A, Jul. 8, 2020, ECF No. 1.

///

On May 8, 2020, Plaintiff filed a class and representative action Complaint in Sacramento Superior Court against Defendants for alleged employment law violations arising from his employment with Terminix.  In his Complaint, "Plaintiff asserted claims for: (1) failure to provide wages due upon termination; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay overtime; (5) failure to provide accurate wage statements; (6) failure to indemnify necessary business expenses; (7) violations of the California Business and Professions Code sections 17200 et seq.; and (8) civil penalties under PAGA."  Mot. to Compel Arb. at 5.  On July 8, 2020, Defendants timely removed the case to this Court.  Not. of Removal, ECF No. 1.

Presently before the Court are Plaintiff's Motion to Remand, ECF No. 5, and Defendants' Motion to Dismiss, Compel Arbitration, and Stay Proceedings, ECF No. 7, both of which are fully briefed.  For the reasons set forth below, Plaintiff's Motion to Remand is DENIED and Defendants' Motion to Compel Dismiss, Arbitration, and Stay Proceedings is GRANTED.[1]

## BACKGROUND[2]

Plaintiff was employed by Defendants as a field representative or "outside sales representative" from approximately November 2014 to April 2019.  During the relevant period, Plaintiff alleges he was subject to violations of the California Labor Code and California Business and Professions Code and that civil penalties are warranted under PAGA.

According to Defendants, Plaintiff's employment with them was subject to their mandatory arbitration policy, the We Listen Plan ("Agreement"), which they purportedly provided to employees at least three separate times.  First, during the onboarding

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[2] Unless stated otherwise, the following recitation of facts is taken from Defendants' Not. Of Removal, Ex. A, ECF No. 1, Defendants' Motion to Compel Arbitration, ECF No. 7, and Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, ECF No. 9.

process, Defendants purportedly provided their employees with the Associate Handbook, which contained a summary of the Agreement on pages 11 through 13 in the same formatting and font style as the rest of the Associate Handbook.  Employees, including Plaintiff, then sign a Handbook Acknowledgement Form, which states:

> I also acknowledge receiving information on how to utilize ServiceMaster's mandatory dispute resolution program, *We Listen*, to resolve any and all work-related disputes/concerns and its requirement to arbitrate such disputes if they are not resolved.

Glass Decl., Ex. B (2018 Plan) at 18, ECF No. 7-2.  In bold and capitalized text, however, that same form also provides:

> **I ACKNOWLEDGE THAT THE HANDBOOK IS NOT AN EMPLOYMENT CONTRACT AND IS NOT INTENDED TO, NOR DOES IT, CREATE A CONTRACT OF ANY KIND.**

Id.

Second, Defendants contend they provide their employees with a hard copy of the Agreement itself.  Id.  Employees were not required to acknowledge or sign that Agreement, and Plaintiff contends that it, in fact, was never provided to him.  ECF No. 9 at 12.  Regardless, the Agreement is purportedly intended to cover the following:

> For purposes of this Plan, a Covered Dispute means all claims or disputes arising out of or relating to my employment, termination of employment or application for employment that I or the Company could otherwise have resolved in a court. . . The Plan covers the following legal claims that either the Company or I could bring relating to my employment relationship with the Company, including, but not limited to, those related to: . . . (vii) claims under federal, state or local law regarding wages and other compensation, benefits, reimbursement of expenses . . . and associated laws.

ECF No. 7-2 at Ex. G at 31.

Third, Defendants aver that they had employees electronically review and acknowledge receipt of several documents, including the Agreement, in its then-HRIS system known as "myHR."  Once logged into the portal, Defendants' employees were instructed to "Read the [Agreement], and then select 'Done' to move to the next page."  Once the employee selected the link to the Agreement, a copy of the Agreement was

3

displayed in PDF format, which the employee could save electronically to his/her computer or print in hard copy.  The first paragraph of the Agreement in the myHR portal states:

> **The Plan includes a mutual agreement to arbitrate my individual covered Disputes which is the exclusive, final and binding remedy for both the Company and me and includes a class action waiver**.  I understand the Company nor I will be allowed to bring any Disputes to a court or jury for a resolution except as set forth in the Plan.

Id. at Ex. C at 20.

After closing or minimizing the We Listen document, the employee was returned to a "Checklist screen" and shown a message that rest: "By clicking 'Done' you acknowledge that you have been given access to the [Agreement] and that it describes important information about the company and that you should consult your supervisor, manager or human resources about any questions regarding information contained in the [Agreement]."  (emphasis added).  After acknowledging receipt of the Agreement on November 18, 2014, Plaintiff continued to work for Defendants until April 3, 2019.

In November 2018, Defendants rolled out the 2018 version of the Agreement ("2018 Agreement") in conjunction with the prior version of the Agreement.  On December 21, 2018, Defendants emailed the 2018 Agreement to employees via email and posted the 2018 Agreement to the company intranet as well as Defendants' online forum.  Moreover, these corporate communications stated that "continued employment 'constitutes an implied agreement to use this process.'"  Additionally, Defendants' branch managers distributed copies of the 2018 Agreement to all branch employees.  The 2018 Agreement became effective on January 1, 2019.

Plaintiff maintains, however, that he never received the Handbook or the communications regarding the 2018 Agreement roll out from Defendants.  Plaintiff further asserts that he never received the document from his branch manager.  Furthermore, Plaintiff alleges that he did not see any postings of the 2018 Agreement on the company's intranet.  Plaintiff further contends that all employees had the same intranet

login information.  Finally, according to Plaintiff, all documents that were acknowledged through the intranet, had to be acknowledged simultaneously upon clicking "Done reading," even though it was impossible to read all the documents at once.

**STANDARD**

    A.    **Motion to Remand**

When a matter over "which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

    A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id.  Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

///

///

## B. Motion to Compel Arbitration and Stay Proceedings

"The [Federal Arbitration Act ("FAA")] was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] . . . a 'liberal federal policy favoring arbitration." Concepcion, 131 S. Ct. at 1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). At the same time, however, § 2 reflects "the 'fundamental principle that arbitration is a matter of contract.'" Id. (quoting Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)). "[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims, in accordance with the terms of the agreement; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." Id. at 1748.

Thus, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). "Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'" Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting Moses H. Cone, 460 U.S. at 24; Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1144 (9th Cir. 1991); French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir. 1986)).

6

///

Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Instead, the Court must limit its inquiry to three steps: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. Standard Fruit, 937 F.2d at 476-78.

## ANALYSIS

### A. Motion to Remand

The Class Action Fairness Act ("CAFA") gives federal district courts original jurisdiction over any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; (2) the action is pled as a class action involving more than 100 putative class members; and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d). Plaintiff does not dispute the second and third[3] requirements, and thus the dispositive issue with respect to the Motion to Remand is whether the $5,000,000 amount in controversy requirement is satisfied.

Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." Id. § 1332(d)(6). "A defendant's notice of removal need include only a plausible

---

[3] Plaintiff only disputes complete diversity of citizenship in the instant Motion. See generally ECF No. 5. However, CAFA requires only minimal diversity, which Plaintiff does not challenge here, ECF No. 13 at 2-3, and which the Court finds has been established.

1  ///

2  allegation that the amount in controversy exceeds the jurisdictional threshold." Dart

3  Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).

4      When a plaintiff challenges the amount in controversy, the Ninth Circuit requires

5  the defendant opposing remand to demonstrate, by a preponderance of the evidence,

6  that the amount in controversy will likely exceed $5,000,000.  Ibarra v. Manheim

7  Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).  Where damages are not stated

8  in the complaint or, "in the defendant's view are understated," the defendant must submit

9  competent, summary judgment-type evidence relevant to the amount in controversy at

10 the time of removal in order to carry its burden.  Id.  Although a defendant may rely on

11 good-faith calculations, those calculations must not be based on unreasonable or

12 speculative assumptions.  Ellis v. Pac. Bell Tel. Co., No. SACV 10-01141, 2011 WL

13 499390, at *2 (C.D. Cal. Feb. 10, 2011); Ibarra, 775 F.3d at 1197.

14     According to Plaintiff, the inferences Defendants make from the Complaint are

15 flawed.  ECF No. 5 at 15-18.  Specifically, Plaintiff argues that Defendants improperly

16 rely on "several broad assumptions to support…amount-in-controversy calculations: the

17 estimated number of residential outside sales professionals ("OSPs") employed by

18 [Defendant] Terminix LP in California during the class period; the estimated total number

19 of weeks they worked; the estimated number of OSPs terminated since May 8, 2017,

20 and the OPSs' average hourly rates of pay."  Id.  At 15-16.  Finally, Plaintiff contends that

21 Defendants' reliance on the declaration of paralegal Lisa Glass[4] is improper because

22 Defendants "fail[] to provide any explanation of how [Ms. Glass] arrived at [these

23 assumptions] or why she was unable to provide more accurate and concrete numbers."

24 Id. at 16.  The Court disagrees.

---

[4] Ms. Glass is a Paralegal III at Defendant The ServiceMaster Company, LLC ("ServiceMaster"), parent company of Defendant Terminix LP, where she has been employed for approximately 25 years. ECF No. 1-2 ¶ 1.  Ms. Glass previously held the position of Associate Relations Advisor at Defendant ServiceMaster.  Id.  Ms. Glass declared her personal knowledge of the relevant facts based on her review of Defendant ServiceMaster business records and files maintained and generated in the ordinary course of business, including employment records and payroll data.  Id. at ¶¶ 2-4.

///

Defendants allege in their Notice of Removal that Plaintiff's claims "unquestionably exceed" the $5,000,000 amount in controversy threshold, as Plaintiff seeks to represent a putative class for the relevant class period spanning approximately four years.[5]  ECF No. 1 at 10-11.  Moreover, the Notice of Removal provides calculations for all the relevant causes of action pled by the Plaintiff along with the basis on which they rest.  ECF No. 1, ¶¶ 38-43; see generally ECF No. 1, Ex. D, Glass Decl.  Aggregated together, damages and attorneys' fees for the first six causes of action could plausibly exceed $48 million.  This figure is supported by competent evidence and is properly based on reasonable assumptions deriving from Plaintiff's allegations that (1) Defendants engaged in a "pattern and practice" to commit each asserted Labor Code violation; and (2) each proposed putative class member "all similarly suffered irreparable harm and damages" as a result of said violations, which are "common to all proposed class members."  Id. at ¶ 27.  Those assumptions are that each proposed class member suffered consistent Labor Code violations throughout the class period.  The Court finds the assumptions on which Defendants base their damages calculations to be reasonable and certain.  Therefore, because the amount in controversy exceeds the statutory minimum of $5,000,000, Plaintiff's Motion for Remand is DENIED.

### B. Motion to Compel Arbitration, and Stay Proceedings

Defendants next contend that the bulk of Plaintiff's claims should proceed on an individual basis before an arbitrator.[6]  Plaintiff disagrees, of course, arguing primarily that

---

[5] In the Complaint, Plaintiff seeks to represent three putative subclasses: "(1) Subclass A: all field representatives (also referred to by Defendants as 'outside sales representatives') employed by Defendants in California during the four years preceding the filing of this complaint to the present; (2) Subclass B: all California employees who received a wage statement during the one year preceding the filing of this complaint to the present; (3) Subclass C: all California employees who Defendants required to use their personal cell phones, cell service, or internet, to do their jobs, during the four years preceding the filing of this complaint to the present."  Id. at ¶ 22 (emphasis added).

[6] Defendants seek to stay Plaintiff's PAGA claims, which are not arbitrable.  See, Correia v. NB Baker Electric, Inc., 32 Cal. App. 5th 602 (2019).

9

Plaintiff never entered into an arbitration agreement with Defendants.[7]

While the FAA expresses a strong public policy in favor of enforcing arbitration agreements, that policy only becomes relevant if there is an arbitration agreement to be enforced in the first place. Baker v. Osborne Dev. Corp., 159 Cal. App. 4th 884, 892 (2008). "[T]he question of whether a party is bound by an agreement containing an arbitration provision is a 'threshold question' for the court to decide." Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1357 (Fed. Cir. 2004) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964)) (applying Ninth Circuit law). In determining whether an agreement to arbitrate exists, the district court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996); see also Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

Because the existence of an arbitration agreement is a statutory prerequisite to granting a petition to compel arbitration, the party seeking to enforce the agreement bears the burden of proving the agreement exists by a preponderance of the evidence. Rosenthal v. Great W. Fin. Secs. Corp., 14 Cal. 4th 394, 413 (1996). "When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Federal Rule of Civil Procedure 56." Concat LP, 350 F. Supp. 2d at 804 (quoting McCarthy v. Providential Corp., 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994)). "Only when there is no genuine issue of material fact concerning the formation of an agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement." Id. (citing Three Valleys Mun. Water Dist., 925 F.2d at 1141).

Under California law, "[g]eneral principles of contract law determine whether the parties have entered into a binding agreement to arbitrate." Sefarin v. Balco Properties

---

[7] This Court finds that, given Defendants' nationwide operations, the interstate commerce element of the FAA is satisfied.

1 Ltd., LLC, 235 Cal. App. 4th 165, 173 (2015) (quoting Museum Tower Assn. v. Pinnacle
2 Market Development (US) LLC, 55 Cal. 4th 223, 236 (2012)).  Thus, the essential
3 element of mutual assent of the parties to be bound by the terms of the contract must be
4 established for a valid arbitration agreement to exist.  Id. (citing Donovan v. RRL Corp.,
5 26 Cal. 4th 261, 2270 (2001)).  Further, mutual assent of the parties to contract must be
6 communicated by each party to one another.  Cal. Civ. Code. § 1565.  "Mutual assent is
7 determined under an objective standard appl[ied] to the outward manifestations or
8 expressions of the parties, i.e., the reasonable meaning of their words and acts, and not
9 their unexpressed intentions or understandings."  Id. (quoting Alexander v. Codemasters
10 Group Limited, 104 Cal. App. 4th 129, 141 (2002)).

11      Defendants assert Plaintiff agreed to arbitration when he continued to work for
12 Defendants receiving copies of the 2013 Agreement and then the updated 2018
13 Agreement.  California law holds, "'[a]bsent a clear agreement to submit disputes to
14 arbitration, courts will not infer that the right to a jury trial has been waived." Adajar v.
15 RWR Homes, Inc., 160 Cal. App. 4th 563, 569 (2008).  "A signed agreement is not
16 necessary, however, and a party's acceptance may be implied in fact."  Pinnacle
17 Museum Tower Assn. v. Pinnacle Market Development (US), LLC, 55 Cal. 4th 223, 236
18 (citing Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (2000) (the court found an
19 employee's continued employment constituted acceptance of the employer's proposed
20 arbitration agreement)).

21      Plaintiff asserts that he never received either Agreement and, therefore, could not
22 have impliedly consented to its terms through his employment.  On the other hand,
23 Defendants provide ample evidence that Plaintiff was informed of the 2014 Agreement
24 when he onboarded and was informed of the 2018 Agreement.  This evidence is
25 persuasive.  See Craig, 84 Cal. App. 4th at 421 (direct mailings created presumption
26 plaintiff received an arbitration policy, shifting the burden of proof back to plaintiff).  By
27 continuing to work for Defendants after being notified of the arbitration policy or changes
28 to that policy, Plaintiff implicitly consented to be bound by the Agreement.  Diaz v.

1  Sohnen Enterprises, 34 Cal. App. 5th 126, 130 (2019) ("[W]hen an employee continues his
2  or her employment after notification that an agreement to arbitration is a condition of
3  continued employment, that employee has impliedly consented to the arbitration
4  agreement."); see also, Harris v. TAP Worldwide, LLC, 248 Cal. App. 4th 373, 383-84
5  (2016); Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev., 55 Cal. 4th 223, 236
6  (2012); and Craig v. Brown & Root, Inc. 84 Cal. App. 4th 416, 420 (2000).  Given that,
7  the Agreement is enforceable, and Defendants' Motion to Compel Arbitration and Stay
8  the Case is GRANTED.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (ECF NO. 5) is DENIED and Defendants' Motion to Compel Arbitration and Stay the Case (ECF No. 7) is GRANTED.  This case is hereby STAYED pending resolution of Plaintiff's individual claims before the arbitrator.  Not later than sixty (60) days following the date this Memorandum and Order is electronically filed, and every sixty (60) days thereafter, the parties are directed to file a Joint Status Report, advising the Court as to the status of those arbitration proceedings.

IT IS SO ORDERED.

Dated:  August 17, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE